*To Be Argued by Michael H. Sussman*

# 23-7231

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

--------------------------------------------------------

FRANK MORA,

*Plaintiff-Appellant,*

v.

NEW YORK STATE UNIFIED COURT SYSTEM, OFFICE OF COURT ADMINISTRATION, ANNE MINIHAN, LAWRENCE MARKS, JUSTIN BARRY, ROSEMARY MARTINEZ-BURGES, JENNIFER DILALLO, SHAWN KERBY, KEITH MILLER, LINDA DUNLAP-MILLER, SCOTT MURPHY, MICHELLE SMITH, JOHN SULLIVAN, DAN WEITZ, NANCY BARRY, TAMIKO AMAKER,

*Defendants-Appellees.*

--------------------------------------------------------

**On Appeal from an Order and Judgment of the
United States District Court for the Southern District of New York**

## APPELLANT'S BRIEF-IN-CHIEF

SUSSMAN & GOLDMAN
*Attorneys for Plaintiff-Appellant*
1 Railroad Avenue, Suite 3
P.O. Box 1005
Goshen, New York 10924
(845) 294-3991 [Tel.]
(845) 294-1623 [Fax]

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................. ii

PRELIMINARY STATEMENT....................................................... 1

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.... 1

STATEMENT OF ISSUES PRESENTED................................... 2

STATEMENT OF THE CASE............................................... 3

STATEMENT OF FACTS.................................................... 4

SUMMARY OF ARGUMENT............................................ 9

STANDARD OF REVIEW................................................ 12

ARGUMENT .................................................................... 13

    Point I

    Mora states a plausible Free Exercise claim, and the district court
    erred in dismissing it.................................................... 13

    Point II

    UCS employed Mora and is covered by Title VII...................... 19

    Point III

    The SAC plausibly alleges that UCS violated Title VII............... 22

    Point IV

    Mora alleges a viable Equal Protection Claim........................ 27

i

Point V

The district court erred in dismissing the retaliation claim against
Appellee Marks ................................................................ 29

Point VI

Qualified immunity does not support dismissal ............................................. 34

Point VII

Mora's request for an injunction is not moot................................................. 36

CONCLUSION ................................................................ 38

CERTIFICATE OF COMPLIANCE ................................................................ 39

# TABLE OF AUTHORITIES

## Cases

*Am. Freedom Def. Initiative v. MTA,*
    109 F.Supp.3d 626 (S.D.N.Y. 2015)............................................................. 37

*Ashcroft v. Iqbal,*
    566 U.S. 662 (2009) ........................................................................... 12, 13

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................... 12, 13

*Bloom v. N.Y.S. Unified Court Sys.,*
    2020 U.S. Dist. LEXIS 191883 (E.D.N.Y. 2020)...................................... 33

*Buon v. Spindler,*
    65 F.4th 64 (2d Cir. 2023)............................................... 23, 24, 25, 27

*Butler v. New York State Dep't of Law,*
    211 F.3d 739(2d Cir. 2000)............................................................... 21

*Cent. Rabbinical Cong. of the U.S. & Can. v.*
*N.Y.C. Dep't of Health & Mental Hygiene*
    763 F.3d 183 (2d Cir. 2014)........................................................... 17, 18, 19

Chambers v. TRM Copy Centers Corp.,
    43 F.3d 29 (2d Cir. 1994)................................................................. 30

*EEOC v. Abercrombie & Fitch Stores, Inc.,*
    5 U.S. 768 (2015) ............................................................................. 23

*Emp. Div., Dep't of Hum. Res. of Or. v. Smith,*
    494 U.S. 872 (1990)......................................................................... 13, 15

*Fulton v. City of Philadelphia,*
    141 U.S. 1868 (2021) ....................................................................... 16

*Garcia v. N.Y. City Dept. of Health & Mental Hygiene,*
    31 N.Y.3d 601 (2018) ...................................................................... 10

*Gordon v. County of Rockland,*
　　110 F.3d 886 (2d Cir. 1997)..................................................................... 22

*Greater N.Y. Taxi Assn. v. NY City TLC,*
　　25 N.Y.3d 600 (2015) ................................................................................ 11

*Gregory v. Ashcroft,*
　　501 U.S. 542 (1991) ............................................................................... 2, 20

*Hicks v. Baines,*
　　593 F.3d 159 (2d Cir. 2010)....................................................................... 30

*Kane v. De Blasio,*
　　19 F4th 152 (2d Cir. 2021)..................................................................... 19, 35

*Kennedy v. Bremerton Sch. Dist.,*
　　142 S.Ct. 2407 (2022) ................................................................................ 13

*Littlejohn v. City of New York,*
　　795 F.3d 297 (2015)................................................................................... 23

*Matter of Campagna v. Shaffer,*
　　78 N.Y.2d 237 (1989) ................................................................................. 10

*Matter of Ventresca-Cohen v. DiFiore,*7
　　7 Misc.3d 652 (Sup.Ct. Albany Cty. 2022) ................................. 5, 18, 26, 27

*McDonnell Douglas Corp. v. Green,*
　　411 U.S.792 (1973)..................................................................................... 29

*McKeown v. N.Y.S. Comm'n on Judicial Conduct,*
　　375 F.App'x 121 (2d Cir. 2010) ................................................................. 32

*Medical Professionals for Informed Consent, et al. v. Bassett, et al.,*
　　78 Misc.3d 482 (Sup.Ct. Onondaga Cty. 2023).................................. 9, 10, 11

*Mireless v. Waco,*
　　502 U.S. 9 (1991) ....................................................................................... 33

iv

*Reeves v. Sanderson Plumbing Products, Inc.*,
530 U.S. 133 (2000) ........................................................... 30

*Selevan v. New York Thruway Authority*,
584 F.3d 82 (2d Cir. 2009) ................................................ 12

*Stern v. Trustees of Columbia Univ.*,
131 F.3d 305 (2d Cir. 1997) .............................................. 30

*Summa v. Hofstra Univ.*,
708 F.3d 115 (2d Cir. 2013) .............................................. 29

*TWA v. Hardison*,
432 U.S. 63 (1977) ............................................................ 23

*Tandon v. Newsom*,
141 S. Ct., 1294 (2021) ..................................................... 17

*United States v. Seeger*,
380 U.S. 163 (1965) .......................................................... 23

*Vega v. Hempstead Union Free Sch. Dist.*,
801 F.3d 72 (2d Cir. 2015) ................................................ 23

*Village of Arlington Heights v Metropolitan Housing Corp.*,
429 U.S. 252 (1977) .......................................................... 30

*We, The Patriots v. Hochul*,
17 4th 266 (2d Cir. 2021) .................................................. 14

*We, The Patriots USA, et al. v. Ct. office of Early Childhood Dev't*,
76 F.4th 130 (2d Cir. 2023) ......................................... 15, 16

*Welsh v. United States*,
398 U.S. 333 (1970) .......................................................... 23

*Zahra v. Town of Southhold*, 4
8 F.3d 674 (2d Cir. 1975) ................................................. 28

## <u>Statutes</u>

28 U.S.C. § 1291 ......................................................................... 1

28 U.S.C. § 1331 ......................................................................... 1

42 U.S.C. § 1983 ......................................................................... 1

42 U.S.C. § 1988 ......................................................................... 1

42 U.S.C. §2000e(f) ..................................................................... 9

42 U.S.C. § 2000e(j) ............................................................. 22, 23

42 U.S.C. § 2000e-2(a)(1) ........................................................ 22

## <u>Federal Rules</u>

Fed. R. Civ. P. 8(a)(2) ............................................................ 13

F. R. Civ. P. 12(b)(6) ............................................................. 12

Fed. R. App. P. 4(a)(4)(A)......................................................... 1

## <u>Federal Regulations</u>

29 C.F.R. § 1605.2............................................................. 22, 23, 24

## PRELIMINARY STATEMENT

A deeply devout man, Appellant Frank Mora, a full-time City Court Judge, sought a religious exemption after his employer, the New York State Unified Court System (hereinafter "UCS"), implemented a vaccination requirement for its employees. UCS denied his request and baselessly rejected his application for a religious exemption. UCS and the individual Defendants-Appellees disallowed Mora from attending to his workplace, significantly altered his duties and engaged in blatant religious discrimination, which violated the First Amendment and Title VII. The district court erroneously dismissed Mora's claims and this appeal timely follows. For the reasons set forth below, the district court's judgment should be reversed and vacated, and the matter remanded for further proceedings.

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

As Mora's claims arise under the First and Fourteenth Amendments to the U.S. Constitution, as made actionable by 42 U.S.C. § 1983, the district court below had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983 and 1988. On September19 2023, the district court entered final judgment, and, on September 29, 2023, Mora timely filed his notice of appeal. As such, this Court has appellate jurisdiction under 28 U.S.C. § 1291. *See also* Fed. R. App. P. 4(a)(4)(A).

## STATEMENT OF ISSUES PRESENTED

1. Whether the district court erred in holding that Mora's request for permanent injunction became moot when UCS ended the challenged immunization requirement [the day before the hearing on appellant's application for a preliminary injunction], where UCS's determination that he does not hold a sincere religious belief remains a matter of record which can be held against him should, as is likely, the same situation obtain in the future?

2. Whether the district court erred in holding that city court judges like Mora are "policymaking" level appointees excluded from Title VII's coverage of under *Gregory v. Ashcroft*, 501 U.S. 542 (1991)?

3. Whether the district court erred in dismissing plaintiff's free exercise claims against the individual Appellees, who, absent any statutory authority and contrary to New York State's prohibition against mandatory vaccination for adults, barred him from his workplace despite his sincerely held religious beliefs?

4. Whether the district court erred in concluding that the mandatory vaccination regulation was constitutional because it was a "valid and neutral law of general applicability" when, plainly, the Second Amended Complaint (hereinafter "SAC") pled that the law met none of the standards required for such findings?

5. Whether the district court erred in dismissing Mora's retaliation claim against Appellee Marks, though the latter referred Mora to a disciplinary committee in retaliation for the exercise of his sincerely held religious beliefs?

6. Whether the district court erred in dismissing Mora's selective enforcement claim arising under the Equal Protection clause on the ground that the SAC failed to plead facts required to demonstrate that comparators who UCS exempted from the immunization requirement and treated more favorably were similarly situated?

## STATEMENT OF THE CASE

On or about December 6, 2022, Mora filed his Complaint against his employer, UCS, and thirteen individuals who implemented the unconstitutional imposition upon his religion (JA-1 Docket No. 1). Appellees sought an extension of time to answer or move. On January 19, 2023, Mora then filed a motion for a preliminary injunction, requesting that the district court enjoin his continued exclusion from the City of Poughkeepsie Courthouse (JA-7 Docket Nos. 49-52). On January 26, 2023, Appellees sought and obtained an extension of the return date (JA-8 Docket Nos. 62-63; JA-9 Docket Nos. 66-67) and, the day before the extended return date, withdrew their directive prohibiting Mora from sitting as a jurist at the City of Poughkeepsie Courthouse, whereafter Mora resumed the full range of his judicial responsibilities (JA-9 Docket No. 68).

3

On February 28, 2023, Appellee UCS and the individual Appellees filed separate motions to dismiss. On March 2, 2023, the district court provided Mora an opportunity to amend his Complaint, which he did on March 15, 2023 (JA-10 Docket Nos. 76-79). On April 5, 2023, the individual Appellees moved to dismiss the First Amendment Complaint (hereinafter "FAC") and the UCS and OCA Appellees advised the court they would rely on the papers filed in support of their motion to dismiss the original complaint, re-directing same to the FAC (JA-10-11 Docket Nos. 81-85).

On May 6, 2023, Mora sought leave to file a Second Amended Complaint to name Tamiko Amaker as a defendant (JA-11 Docket No. 88). The district court granted this motion and Mora filed the SAC on May 15, 2023 (JA-15-93). Appellees re-directed their motions to dismiss to Mora's SAC and, by Opinion and Order, dated September 19, 2023, the district court granted both motions and the clerk entered final judgment dismissing the action. (JA-259-87). On September 29, 2023, Mora timely noticed his appeal (JA-288) and now timely perfects.

## STATEMENT OF FACTS

The SAC avers that Mora is a devout, knowledgeable, and committed Catholic, who adheres to sincerely held religious beliefs that prohibit him from subjecting a healthy body to vaccinations (JA 15 ¶ 1). Appellee Marks served as the UCS or Office of Court Administration's (hereinafter "OCA") Chief Administrative

Judge; Appellee Tamiko Amaker is his successor and Appellee Minihan is the Administrative Judge for the Ninth Judicial District (JA-16 ¶ 3). The remaining eleven Appellees were members of the Vaccine Exemption Committee [hereinafter "VEC"], who, as a group, denied Mora's application for a religious accommodation. *See Matter of Ventresca-Cohen v. DiFiore*,77 Misc.3d 652, 656 (Sup.Ct. Albany Cty. 2022). VEC's determinations were final, and UCS provided no review mechanism for denials (JA-19 ¶ 26).

In August 2021, the Chief Judge of the New York State Court of Appeals promulgated a requirement that each UCS employee be vaccinated except if they qualified for a religious or medical exemption (JA-17 ¶ 8).

On September 10, 2021, Appellee Marks required all judges to submit proof of COVID-19 vaccination or their application for an exemption by September 27, 2021 (JA-18 ¶ 13). UCS's "application" for religious exemption recognized its legal obligation to grant a religious exemption to those with sincerely held religious beliefs (JA-18 ¶ 17).

Judge Mora complied and submitted a notarized statement attesting to his sincerely held religious beliefs and his commitment to submit weekly proof of testing (JA-19 ¶¶ 19-22). Thereafter, VEC made five inquiries of Judge Mora, suggesting that he had represented that he did not take medication when ill, a distortion of his religious beliefs (JA-21 ¶ 32). Mora replied to each inquiry,

explaining that he had never taken a vaccinate after he reached the age of majority and further explicating the religious nature of his refusal to vaccinate (JA-21 ¶¶ 33-35). While his application for religious exemptions was pending, Mora continued working at and from the City Court (JA-19 ¶ 18; JA-21 ¶ 36).

On December 23, 2021, while granting other like applications for religious exemption, VEC denied Mora's request without any explanation (JA-21 ¶¶ 37-38). Without further comment, Appellee Marks implemented VEC's determination and directed Mora to provide proof of vaccination within ten days (JA-21 ¶ 39).

On December 28, 2021, Mora filed a charge of unlawful discrimination with the New York State Division of Human Rights (hereinafter "SDHR") alleging that, by denying his request for religious accommodation, appellee UCS had engaged in discrimination against him on the basis of religion (JA-21 ¶ 40).

On January 3-4, 2022, Mora reiterated to Appellee Minihan that he could not be vaccinated without violating his sincerely held religious beliefs; regardless, she prohibited him from entering any courthouse in New York State (JA-22 ¶ 41). The barment order continued in full force and effect until February 17, 2023, long after appellees allowed unvaccinated persons to return to and use the state's courthouses (JA-22 ¶¶ 42-45). By dint of the barment order and subsequent orders, Appellee Minihan disallowed appellant from discharging a substantial share of his duties, humiliated and embarrassed him (JA-23 ¶ 50).

In responding to Mora's SDHR charge, counsel for UCS claimed that Mora had failed to provide the VEC "with necessary information to determine if his request was based on a sincerely held religious belief" JA-23 ¶ 51). This statement is demonstrably false since Mora fully responded to each of the supplemental questions VEC posed in November 2021, and VEC never apprised him of any deficiency in his response or asked him for any further information (JA-23 ¶ 52).

According to the SAC, the VEC applied arbitrary bases for denying religious exemptions, granting one to another sitting judge while denying one to the same judge's wife, another judge, who shared the same religious beliefs and patterns of observance (JA-24 ¶¶ 56-61). Likewise, the VEC acted in a highly arbitrary manner by denying Mora's request for a religious accommodation while awarding the same to two other employees whose applications "are substantially similar to that submitted by appellant, involving the same doctrinal basis in support of their requests for religious exemptions. (JA-25 ¶¶ 62-63). Mora adduced such evidence to demonstrate the arbitrary and capricious nature of his employer's conduct and the absence of any hardship it would face in granting him the sought religious exemption.

Rather than simply denying his request for a religious accommodation, appellees Marks and UCS went further, seeking to have Mora disciplined by the New York State Commission on Judicial Conduct for refusing vaccinations that

7

violated his sincerely held religious beliefs (JA-25 ¶ 67). Before this referral for disciplinary action, which remains pending, neither Marks nor the UCS had advised Mora that, by complying with his religious beliefs, he could expose himself to such discipline (JA-26 ¶ 70).

The SAC avers that, even after the CDC altered its guidelines and approved the return of unvaccinated persons to their workplaces, Appellees continued to exclude appellant Mora from his (JA-27-28 ¶¶ 78-83; JA-29 ¶¶ 93-94). The SAC further alleges that Appellees contravened long-established Supreme Court teaching concerning the nature and basis of sincerely held religious beliefs when it refused to recognize the sincerity of his religious beliefs (JA-29 ¶¶ 89-90).

Based on the facts therein set forth, the SAC includes five causes of action: (1) under Title VII and against UCS for failing to provide him a religious exemption and depriving him of the free exercise of his religion [SAC at 97]; (2) as against the members of VEC for their violation of Mora's right to the free exercise of religion; (3) as against Appellee Marks for reprising against Mora and burdening his right to freely exercise his religion; (4) against Marks, Amaker and Minihan for violating Mora's right to Free Exercise as guaranteed by the First Amendment by imposing and enforcing overbroad, selective and irrational prohibitions against him; and (5) as against the VEC members for denying appellant Equal Protection of the law while granting similarly-situated persons such exemptions (JA-29-31 ¶¶ 96-105).

In granting Appellees' motions to dismiss, the district court held that (a) Mora's request for injunctive relief was moot because the state repealed its vaccination mandate, finding "the SAC does not allege the existence of any other vaccine mandate from which he seeks an exemption" (JA-270-71); (b) Mora is not an employee for purposes of Title VII because he is a policy-maker and falls within the exceptions to coverage set forth in 42 U.S.C. §2000e(f) (JA-273-74); (c) Mora fails to state a claim under the Free Exercise Clause against the individual Appellees because the Vaccine Mandate was neutral and of general applicability, was not enacted with an invidious purpose or applied in a manner favoring certain religious beliefs over others, and is rationally related to a legitimate state interest (JA-275-81); (d) Mora failed to state a "ripe" claim against Marks because this Appellee took no final adverse action against him (JA-282-83); and (e) Mora did not plead a viable equal protection claim because he failed to allege that he was treated differently from a similarly situated individual because of his religious beliefs (JA-284-85).

## SUMMARY OF ARGUMENT

As has been noted in a plethora of recent judicial decisions, the New York State Department of Health "has acknowledged the mandated vaccine fails to accomplish its stated goal, *i.e.*, prevent the spread of COVID-19." *Medical Professionals for Informed Consent, et al. v. Bassett, et al.*, 78 Misc.3d 482 (Sup.Ct. Onondaga Cty. 2023) (Neri, J.). And, as the SAC alleges, the CDC itself dropped

any recommendation that unvaccinated persons be barred from their workplaces in August 2022, six months before UCS's forced abandonment of the barment order against appellant.

There was no statutory authority for the New York State Department of Health, let alone UCS, to implement mandatory vaccinations, which are contrary to state law. *See* PHL §§ 206, 613. The New York State Court of Appeals has plainly declared that the legislature has never authorized mandatory immunizations for any adult and provided no authority for the Commissioner of Health to promulgate any such regulation. *See Garcia v. N.Y. City Dept. of Health & Mental Hygiene*, 31 N.Y.3d 601, 620 (2018). Applying *Garcia*, Justice Neri held in *Medical Professionals*, "Respondents are clearly prohibited from mandating any vaccination outside of those specifically authorized by the Legislature." 78 Misc.3d at 490.

In March 2021, the New York State Legislature stripped the Governor of any authority to unilaterally promulgate regulations relating to COVID. The rules then promulgated by other state agencies, including UCS, were equally *ultra vires*. "Agencies as creatures of the Legislature act pursuant to specific grants of authority conferred by their creator." *Matter of Campagna v. Shaffer*, 78 N.Y.2d 237, 242 (1989). When an agency promulgates a rule beyond the power it was granted, it usurps the legislative role and violates the separation of powers doctrine. *See*

*Greater N.Y. Taxi Assn. v. NY City TLC*, 25 N.Y.3d 600, 608 (2015). That is precisely what occurred here.

As Justice Neri held in annulling DOH's mandatory immunization rules, "this is not a case where DOH acted in some gray area . . . DOH blatantly violated the boundaries of its authority as set forth by the Legislature." *Medical Professionals*, 78 Misc.3d at491.

Judge Mora held sincere religious beliefs and granting him the sought religious accommodation would not have burdened his employer, OCA, and its agents, the named Appellees, recognized this in providing religious exemptions to others who shared his faith. The challenged denial violated Title VII and the First Amendment and is indefensible. Appellant is not a policymaker as contemplated by Title VII and this Court has never so characterized city judges who are not appointed to discharge the policies of those who select them and operate in a manner allegiant to the law, not the agenda of elected officials.

The Vaccine mandate was neither neutral nor of general applicability. It contemplated numerous exceptions, as set forth in the SAC. No compelling state interest predicated its entry, and the New York State legislature never authorized its implementation.

Appellee Marks engaged in retaliation, and his referral to the Commission on Judicial Conduct is precisely the kind of adverse action that a person of reasonable

firmness would find chilling in the exercise of his or her First Amendment rights to free exercise.

Finally, the SAC does plead that Mora was treated differently than others who were similarly situated and that no basis exists for this other than religious intolerance, which cannot justify the adverse treatment he received.

## STANDARD OF REVIEW

In determining a motion for failure to state a claim under F. R. Civ. P. 12(b)(6), the court must liberally construe plaintiff's complaint, accept all factual allegations as true and draw all reasonable inferences in plaintiff's favor. *See Selevan v. New York Thruway Authority*, 584 F.3d 82, 88 (2d Cir. 2009) (citations omitted). The court must determine whether the complaint "state[s] a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This inquiry is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 566 U.S. 662, 679 (2009).

Where the factual content of the pleading "allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged," the pleading "has facial plausibility." *Id.* at 678. "The plausibility standard is not akin to a 'probability requirement,'" *see id.*, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts [pleaded] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at

556 (citations omitted). Indeed, a pleading need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Iqbal*, 566 U.S. at 678-79. If, accepting all well-pleaded factual allegations as true, the court determines that the complaint "plausibly give[s] rise to an entitlement to relief," *see Iqbal*, 566 U.S. at 679, it must deny the motion to dismiss.

This Court engages in *de novo* review of any order dismissing a complaint and, on review, applying the foregoing standard, this Court reverses orders dismissing plausible claims.

## ARGUMENT

### Point I

**Mora states a plausible Free Exercise claim, and the district court erred in dismissing it.**

The Free Exercise Clause protects "the ability of those who hold religious beliefs of all kinds to live out their faiths in daily life through 'the performance (or abstention from) physical acts.'" *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2421 (2022) (quoting *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 977 (1990)."

The SAC alleges that the individual Appellees disallowed Mora from engaging in the free exercise of his religion and punished/burdened him for abstaining from conduct that violated his religious beliefs. Appellees disallowed Mora's free exercise by insisting that he be vaccinated against his religious beliefs

13

or be barred from his workplace and disallowed from performing essential duties associated with his position. The abnegation of his free exercise right commenced after Appellees refused to grant him a religious accommodation. His exclusion from his workplace and job duties occurred even though OCA itself had implemented reasonable alternatives [masking and testing] to vaccinations and allowed Mora and hundreds of others to use them for months after the mandatory vaccination order became effective and while their applications pended. Even after August 2022, Appellees persisted in imposing on Mora's free exercise rights though, by then, the CDC had announced that there was no scientific basis for excluding unvaccinated people from the workplace because the data did not support the conclusion that the vaccination prevented the spread of COVID.

Despite this, irrationally, Appellees refused to allow appellant to re-enter the workplace and resume his duties until February 17, 2023.

In *We, the Patriots USA, Inc. v. Hochul*, this Court resolved the grant of preliminary injunction and required Appellants to show a substantial likelihood of success in obtaining that relief. Here, the Appellees moved to dismiss, and the court applies a different standard, that is, does the complaint plausibly state a claim?

*We, The Patriots v. Hochul*, 17 4th 266 (2d Cir. 2021) applied rational basis review of appellant's free exercise claim. The district court applied this standard, but this was clearly erroneous because this highly deferential standard of review only

applies when considering a "neutral law of general applicability." *Employment Division v. Smith*, 494 U.S. 872, 879 (1990).

In *We, the Patriots*, the state mandate did not have a religious exemption for health care workers, while here, the mandate imposed on OCA workers included a religious exemption; having committed to such an exemption, Appellees cannot claim that the challenged mandate is of general applicability.

This Court recently upheld the State of Connecticut's repeal of religious exemptions for students. *See* W*e, The Patriots USA, et al. v. Ct. office of Early Childhood Dev't*, 76 F.4th 130 (2d Cir. 2023). In considering whether the repeal met the "general applicability" standard, the Court held as follows:

> The Act does not provide "a mechanism for individualized exemptions," meaning that it does not give government officials discretion to decide whether a particular individual's reasons for requesting exemption are meritorious. *Fulton*, 141 S. Ct. at 1877 (citing *Smith*, 494 U.S. at 884). The medical exemptions the Act provides are instead mandatory and framed in objective terms: A student "shall be exempt" if, for instance, the student "presents a certificate . . . from a physician, physician assistant or advanced practice registered nurse stating that in the opinion of such physician, physician assistant or advanced practice registered nurse such immunization is medically contraindicated because of the physical condition of such child." Public Act 21-6 § 1(a)(2). Likewise, a student "shall be exempt" from immunization against measles, mumps, and rubella upon presentation of "a certificate from a physician, physician assistant or advanced practice registered nurse or from the director of health in such child's present or previous town of residence, stating that the child has had a confirmed case

of such disease." *Id.* § 1(a)(3). In *Hochul*, we joined other Circuits in holding that where a law "provides for an objectively defined category of people to whom the vaccination requirement does not apply," including a category defined by medical providers' use of their professional judgment, such an exemption "affords no meaningful discretion to the State." 17 F.4th at 289; *see also Doe v. Bolton*, 410 U.S. 179, 199 (1973) ("If a physician is licensed by the State, he is recognized by the State as capable of exercising acceptable clinical judgment.").

Plaintiffs are incorrect that the Act's requirement that specified documents supporting requests for medical exemptions be acknowledged by, inter alia, state, and local officials affords such officials the discretion to approve or deny exemptions on a case-by-case basis. *See, e.g.*, Public Act 21-6 § 1(a)-(c). As in *Hochul*, these elements of the Act's medical exemption regime do not allow "the government to decide which reasons for not complying with the policy are worthy of solicitude." 17 F.4th at 289 (quoting *Fulton*, 141 S. Ct. at 1879 (internal quotation marks omitted)).

*Id.* at 150-51

Applying this logic, it is obvious that the challenged regulation here is not one of general applicability as it internalizes subjective judgments without any meaningful standards and, at the very least, its implementation creates factual issues concerning this matter.

Simply stated, the challenged regulation does not meet the definition of a law of general applicability, as defined in *Fulton v. City of Philadelphia*, 141 U.S. 1868, 1877 (2021) because "it invites the government to consider the particular reasons for

a person's conduct by providing a mechanism for individualized exemptions" and provides religious and medical exemptions even though the government interest which assertedly prompts the mandate is compromised by that exemption. *Tandon v. Newsom*, 141 S. Ct., 1294, 1296 (2021) ("Comparability is concerned with the risks various activities pose.").

And, here, the mechanism for individualized determinations cannot be adjudged as being "tied to particularized, objective criteria." Rather, the SAC alleges that the criteria for the grant of a religious exemption is anything but objective; the VEC granted a husband an exemption while denying his equally devout, similarly situated wife one.

And the review process did not commit to any such objective criteria as is exemplified by the decision rendered by Justice Hartman in *Matter of Ventresca-Cohen*, *supra*. In short, contrary to the district court's erroneous conclusion, strict scrutiny analysis applies to review the denial of Mora's right to free exercise.

The SAC presents facts which support the conclusion that the challenged regulation is also underinclusive. A law is "not generally applicable if it is substantially underinclusive such that it regulates religious conduct while failing to regulate secular conduct that is at least as harmful to the legitimate government interests purportedly justifying it." *Cent. Rabbinical Cong. of the U.S. & Can. v. N.Y.C. Dep't of Health & Mental Hygiene ("Cent. Rabbinical Cong.")*, 763 F.3d

17

183, 197 (2d Cir. 2014). The SAC plausibly alleges that, as applied, the regulation is underinclusive: first, the Appellees granted religious exemptions to more than 500 people; second, they granted exemptions to many who shared Mora's religious convictions; and third, they allowed all manner of unvaccinated people into the courthouse to conduct business, including lawyers, jurors, litigants, defendants, witnesses, law enforcement, vendors, contractors, subcontractors, consultants, delivery personnel, cleaning personnel, members of the press, and members of the public, at the same time they barred appellant.

The same factors and a fourth make impossible Appellees' meeting a strict scrutiny standard: they proceeded with their barment order for six months *after* the CDC officially announced the inefficacy of the vaccination in stopping the spread of the disease, the primary prior rationale for the barment order.

In short, applying a strict scrutiny standard, this Court should vacate the order dismissing Mora's free exercise claim as the allegations in the SAC plausibly demonstrate that the challenged order does not meet this standard.

Finally, the district court erred in accepting Appellees' claim that they properly denied Mora's request for religious accommodation. Justice Hartman assessed arguments of the same sort and found them wanting on a fully developed record in *Matter of Ventresca-Cohen, supra*. And Appellees' justification for the denial of Mora's religious exemption application runs asunder of this Court's

reasoning in *Kane v. De Blasio*, 19 F4th 152, 168-69 (2d Cir. 2021) ("it is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigant's interpretations of those creeds." citing *Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989))."

The inquiry that UCS and the district court made into Appellant's sincerely held religious belief represents the precise kind of entanglement of the court in assessing sincerely held religious beliefs that the Supreme Court has condemned because it trespasses upon the separation of church and state and invites the creation of a state religion. "The general applicability requirement in *Smith* "protects religious observers against unequal treatment, and inequality that results when a legislature decides that the governmental interests it seeks to advance are worthy of being pursued only against conduct with a religious motivation." *Cent. Rabbinical Cong.*, 763 F.3d at 196–97 (alterations adopted) (quoting *Church of Lukumi*, 508 U.S. at 542–43). Under *Smith*, a law is not generally applicable if it (1) "invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions[,]…"

## Point II

### UCS employed Mora and is covered by Title VII.

Appellee UCS is Mora's employer, and the common indicia of an employment relationship are undeniably present here:

1. The SAC demonstrates that UCS can and has set the terms and conditions of Mora's employment, including that he must be vaccinated or face referral for discipline, where he can work, the matters to which he can be assigned, and the training he can attend.

2. Likewise, UCS supervised Mora and set the terms and conditions of his employment through the Administrative Judge for the 9th Judicial District, Appellee Minihan.

3. Mora obviously reports to someone higher in the organization and that person directs his workstation, his court assignments and the terms and conditions of his employment, including the supplies he will receive.

4. Mora is not to influence the organization through his advocacy.

5. Mora's terms of employment are set by policies and protocols UCS dictates.

6. As this is not a financially driven enterprise, Mora does not share in profits or losses as traditionally defined.

The district court held that Title VII does not protect "state judges" from discrimination on the basis of race, gender, or religion and that Appellee UCS is statutorily exempt from Title VII. Appellee UCS cited no authority for this proposition. Rather, it submitted that the U.S. Supreme Court so interpreted the same language in the ADEA and exempted state judges from coverage in that context. *See Gregory v. Ashcroft*, 501 U.S. 452, 467 (1991).

20

But the ADEA was not enacted to implement the Fourteenth Amendment; rather, it was enacted under the Commerce power and, accordingly, is subject to greater restraints due to federalism concerns as explained by Justice O'Connor in *Gregory*. Simply stated, federalism allows states to regulate such matters as age limitations on the judiciary and, unless Congress intended to so limit states, Her Honor reasoned, judges should be excluded from coverage.

The same concerns do not apply to an analysis predicated upon statutes passed enacting constitutional guarantees arising from the First and Fourteenth Amendment, specifically statutory prohibitions against discrimination on the basis of religion, race, or gender.

While states may have the authority to regulate the ages of judges, it could not be said in 2023 that a state could discriminate in the terms and conditions of judicial employment based on race, religion, or gender, or that interests of federalism would overcome the nation's interest in insuring equal enforcement of our civil rights laws in such contexts.

Moreover, city court judges are not "policymakers" in any meaningful regard. Nor do they represent an elected official and implement her policies and make policy under her direction. *Cf. Butler v. New York State Dep't of Law*, 211 F.3d 739, 747 (2d Cir. 2000). Nor are city court judges appointed, as are, for example, municipal lawyers, to represent the policies or agenda of those who appoint them. *Cf. Gordon*

*v. County of Rockland*, 110 F.3d 886 (2d Cir. 1997). Their fealty is and must be to

the law, and the notion that they should be regarded as "policy makers" undercuts

regard for the law and compromises our judiciary.

## Point III

### The SAC plausibly alleges that UCS violated Title VII.

Title VII defines unlawful employment practices broadly:

> (a) EMPLOYER PRACTICES It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a)(1)

Discrimination on the basis of religion includes failing to reasonably

accommodate an employee's religious beliefs, unless doing so would cause an undue

hardship on the conduct of the employer's business. *See Id.* § 2000e(j); 29 C.F.R. §

22

1605.2; *EEOC v. Abercrombie & Fitch Stores, Inc.*, 5 U.S. 768, 771-75 (2015); *TWA v. Hardison*, 432 U.S. 63, 73-74 (1977).

As defined by statute, the "term 'religion' includes all aspects of religious observance and practice, as well as belief . . . ." 42 U.S.C. § 2000e(j). Consistent with Supreme Court precedent, the EEOC interprets the term "religion" extremely broadly as including "moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views." 29 C.F.R. § 1650.1 (citing *United States v. Seeger*, 380 U.S. 163 (1965) and *Welsh v. United States*, 398 U.S. 333 (1970)). Moreover, "[t]he fact that no religious group espouses such beliefs or the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee or prospective employee." *Id.*

To survive a Rule 12(b)(6) motion, a plaintiff asserting a discrimination claim under Title VII must allege that he suffered an adverse employment action because of his protected class status. *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). In doing so, he "need only give plausible support to a minimal inference" that the protected trait contributed to the adverse action. *See Littlejohn v. City of New York*, 795 F.3d 297, 311 (2015).

As this Court held earlier this year in *Buon v. Spindler*, 65 F.4th 64, 80 (2d Cir. 2023):

Any decision by an employer, including the denial of a workplace opportunity that materially affects the terms and conditions of employment, can constitute an adverse employment action. *See generally Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (emphasizing that "no particular type of personnel action is automatically excluded from serving as the basis of a cause of action under Title VII, as long as the person is aggrieved by the action" (alteration adopted) (internal quotation marks and citation omitted)); *see also Lewis v. City of Chicago*, 496 F.3d 645, 654 (7th Cir. 2007) ("A strict adherence to labels leads to a meaningless cry of phrases such as `bonus' or `salary' without reaching the critical issue of whether the alleged discrimination caused a material change in the employment relationship.").

For example, it is well settled that "failing to promote" an employee can constitute "a significant change in employment status" that is tangible and thereby qualifies as an adverse employment action under Title VII. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *see also Treglia v. Town of Manlius,* 313 F.3d 713, 720 (2d Cir. 2002) (recognizing discriminatory failure to promote as "within the core activities encompassed by the term `adverse actions'"). Similarly, it is also well settled that "firing" and "*reassignment with significantly different responsibilities*" constitute adverse employment actions. *Ellerth*, 524 U.S. at 761; [emphasis added]; *see also, e.g., Lore v. City of Syracuse*, 670 F.3d 127, 170-71 (2d Cir. 2012) ("The transfer of an employee from an elite position to one that is less prestigious with little opportunity for professional growth is sufficient to permit a jury to infer that the transfer was a materially adverse employment action." (alterations omitted) (internal citation omitted)); *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008) ("Although this transfer did not affect his wages or benefits, it resulted in a less distinguished title and significantly diminished material responsibilities, and therefore constituted an adverse employment action." (internal citation omitted)); *Rodriguez v. Bd. of Ed. of*

24

> *Eastchester Union Free Sch. Dist.*, 620 F.2d 362, 366 (2d Cir. 1980) (transfer of art teacher from junior high school to elementary school held to be an adverse employment action).
>
> Furthermore, other denials of workplace opportunities that affect the terms and conditions of employment can similarly qualify as an adverse employment action. *See Jin v. Metro. Life Ins.*, 310 F.3d 84, 93 (2d Cir. 2002) (emphasizing that the list of examples contained in the Supreme Court's definition of "tangible employment actions" in *Ellerth* was "non-exclusive."

*Id.* at 80 (emphasis added)

Applying this analysis here, Mora was certainly subjected to adverse actions when he was denied admission to his own workplace, deprived of many of the assignments he and other city court judges typically perform, denied attendance at training and networking events, and intentionally isolated from his staff and others.

Below UCS asserted that the SAC does not allege that it violated Title VII because, contrary to the content of the SAC, Mora did not fully cooperate with it and failed to answer its questions about his sincerely held religious beliefs. Of course, this defense goes beyond the pleading and is irrelevant to the motion to dismiss.

However, UCS never advised Mora that it had any issues with his responses, viewed them as incomplete or needed more information from him. It provided him with no reason for the denial of his application for a religious exemption. The SAC demonstrates that UCS failed to participate in the "interactive process" it established,

and that Mora responded fully to all issues and provided explanations for his religious beliefs.

Interestingly, UCS utterly failed to advise the district court that one reviewing state court that examined its process concluded that the substantive criterion it claims to have used in denying religious objections was "arbitrary and capricious" because it was based upon the view that "these petitioners cannot reasonably ground their objections in sincerely held religious beliefs unless they eschew vaccines and medications developed or tested on fetal cells lines in any and all circumstances regardless of necessity." *Ventresca-Cohen*, *supra*, at 663. Justice Hartman wrote, "The court has serious concerns about the validity of any premise that one cannot sincerely hold a religious belief requiring abstinence from COVID-19 vaccines that are developed from fetal cell lines, and at the same time be willing to take medications that have been tested on fetal cell lines under exceptional circumstances." *Id.* at 665.

Of course, a variation of this argument is at the core of Mora's belief – he does not believe in using medications or vaccinations when healthy as he believes that his body is God-created and not to be intruded upon unless exigency commands the same. Like those who object to taking vaccinations developed with fetal cell lines, Mora has a sincerely held religious belief even if he "would take one or more of the listed medications, after consultation with [his] physician, clergy and/or religious

conscience, where critical to [his] life or well-being." *Id.* at 666. Mora explained this in his application and its supplement as well as the scriptural sources for his religious beliefs. The claim that the district court could dismiss his claim on the pleadings because he somehow failed to satisfy some anonymous evaluators was and remains erroneous.

### Point IV

### Mora alleges a viable Equal Protection Claim.

"The Fourteenth Amendment, as made actionable by 42 U.S.C. § 1983, 'provides public employees with the right to be "free from discrimination."' *Id.* at 87 (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)). 'To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law.' *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). 'A state employee acting in his official capacity is acting under color of state law.' *Vega*, 801 F.3d at 88 (internal quotation marks and citation omitted). 'Once the color of law requirement is met, a plaintiff's equal protection claims parallel his Title VII claim, except that a § 1983 claim, unlike a Title VII claim, can be brought against an individual.' *Id.* (internal quotation marks and citation omitted)." *Buon*, 65 F.4th at 78.

Here, appellant has asserted a cognizable right not to be subject to discrimination based upon his religious beliefs, a right protected by the First and Fourteenth Amendments and alleges that persons acting under color of state law denied him of that right. He sets forth a cognizable claim.

Appellant's SAC makes clear that others similarly situated were provided with a religious exemption at the same time and by the same people who denied his. Accordingly, the district court's holding that he provided no facts supporting his selective enforcement claim is erroneous. Indeed, the SAC is replete with relevant facts in Paragraphs 55-66 and 86-87. According to the SAC, despite his having presented sincerely held religious beliefs, the VEC denied him religious accommodation while it granted others with similar applications and bases that very accommodation. As noted earlier, Justice Hartman reviewed Appellees' practices and found that they did not apply any objective measures in determining sincerely held religious beliefs and selectively deprived persons with such beliefs of religious exemptions.

For the same reason, Appellant asserts a viable Equal Protection claim as that provision prohibits the government from treating similarly situated persons differently with discriminatory intent. *See Zahra v. Town of Southhold*, 48 F.3d 674, 683 (2d Cir. 1975). The SAC identifies persons who were similarly situated to appellant and intentionally treated more favorably than he was (JA-24 ¶¶ 55-65).

## Point V

### The district court erred in dismissing the retaliation claim against Appellee Marks.

The Constitution bars retaliation for the exercise of First Amendment rights, including the right to practice one's religion. As noted in *Buon v. Spindler*, infra., retaliation claims arising under the Fourteenth Amendment are analyzed using the same framework as Title VII cases.

Title VII retaliation claims are considered using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). The plaintiff must first establish a *prima facie* case of retaliation by showing "(1) she engaged in protected activity; (2) her employer was aware of this activity; (3) the employer took adverse action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Id.*

As applied here, Mora sought a religious exemption, a form of protected activity under Title VII and, upon being denied, refused to vaccinate based upon his sincerely held religious belief. Informed by these events, Marks referred Mora to the Commission on Judicial Conduct because of Mora's protected activity, that is his religiously based refusal to vaccinate. Indeed, on its face, there is no doubt that Marks so referred, and his action is blatantly retaliatory, not based upon the very protocol he promulgated some four months earlier.

29

If more evidence is needed, retaliatory motive can be demonstrated "either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment; or (2) directly, through evidence of retaliatory animus directed against the appellant by the appellee." *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010). In addition to temporal proximity and disparate treatment, other circumstantial evidence from which an inference of impermissible motive may be drawn includes (1) the "historical background of the decision . . . , particularly if it reveals a series of official actions for invidious purposes"; (2) the "specific sequence of events leading up to the challenged decision," especially if timing involves a sudden change in position; (3) departures from procedural norms; (4) departures form substantive norms and (5) the legislative history of the decision. *Village of Arlington Heights v Metropolitan Housing Corp.*, 429 U.S. 252, 267-68 (1977); *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 313-14 (2d Cir. 1997); Cha*mbers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37-38 (2d Cir. 1994). And the fact-finder's disbelief of appellee's asserted legitimate motivation, when combined with other guilty evidence, may constitute circumstantial evidence of improper motive. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-48 (2000).

Here, despite the clearly established law disallowing a state actor from retaliating or punishing a state employee because the latter has chosen to exercise

his religious beliefs, as an administrative officer, not a presiding judge, Appellee Marks referred Mora for disciplinary action. Nor can Marks plausibly allege any judicial misconduct or conduct arising from Mora's conduct as a judge caused this referral.

Appellees submitted below, and the district court held that the reprisal claim is not ripe. It did not reach Marks' claim that he is entitled to absolute immunity and that, even if true, his conduct would not violate the free exercise clause. However, taking the allegations of the complaint as true, these arguments provide no basis to sustain dismissal of Moras' reprisal claim.

First, Appellee Marks already made his referral, and he did so despite the fact that Mora received no notice that failing to take the vaccination would subject him, or anyone else, to disciplinary action. Indeed, this referral was entirely *ultra vires* and personal, not based upon the protocol or program the same Appellee announced months earlier. Appellees claim that Mora is challenging the ensuing administrative proceeding, but the SAC provides no support for this. Appellant has not sought to enjoin the ensuing Commission investigation; his claim is that Marks acted to reprise against him for asserting his religious beliefs and that this violates his First Amendment's free exercise rights and his right to be free of retaliation based upon religion in violation of the Fourteenth Amendment, made actionable through 42 U.S.C. § 1983.

Mora's claim does not depend upon the completion of the Commission's proceeding that Marks instigated. He asserts that he has already sustained injuries and damages as a result of this reprisal and that it has caused intrusive inquiries into his and his family's medical histories, significant expenses, and stress. Indeed, referrals of this sort are the kind of activity which might well cause a person of reasonable fitness to desist from his or her protected activity out of fear of being censured and publicly embarrassed.

Second, reprisal of the sort alleged violates the United States Constitution, and the action complained of was administrative, not judicial, and did not arise out of any judicial action Mora or Marks took. The cases Marks cites to evade responsibility for his action are inapposite and do not confer absolute immunity for an unconstitutional reprisal of the sort here alleged.

In *McKeown v. N.Y.S. Comm'n on Judicial Conduct*, 375 F.App'x 121, 123 (2d Cir. 2010), the appellant claimed that a judge violated some right of his by failing to report attorneys engaged in misconduct in his court. The Second Circuit wrote, "Here, Appellant's claims against Judge Scarpino were properly dismissed because those claims involved Scarpino's performance of his judicial function. Specifically, Appellant alleges that Scarpino failed to report the misconduct of attorneys appearing in probate proceedings before him and was biased in favor of those attorneys during those proceedings — actions and omissions that were clearly taken

while Scarpino was acting in his judicial role in the probate proceedings. Accordingly, Appellant's claims for money damages against Scarpino are barred by absolute judicial immunity from suit."

There is no analogue here: Mora alleges that, absent any obligation and in a non-judicial role, Marks reported him to the Commission in retaliation for his assertion of a sincerely held religious belief and his refusal then to get vaccinated when VEC issued its *non*-reviewable denial.

*Bloom v. N.Y.S. Unified Court Sys.*, No. 19-cv-7115, 2020 U.S. Dist. LEXIS 191883 (E.D.N.Y. 2020) offers no greater assistance to Appellee Marks. There, the plaintiff brought claims against judges for their participation in the adjudication of grievances filed against him. However, "*[j]udges* have absolute immunity from suits arising from judicial acts performed in their judicial capacities. *Mireless v. Waco*, 502 U.S. 9, 12 (1991). 'Whether an act by a judge is a "judicial" one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.' *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 360 (1978))." Bloom, 2020 U.S. Dist LEXIS 191883 at *9-*10 (emphasis added).

*Bloom* recognizes that not all actions by a judge are "judicial" and shielded by absolute immunity. Here, according to the detailed complaint, Judge Marks was an administrative judge, who had promulgated the regulations governing mandatory

vaccination. He was not involved in the determination of Appellant's application for religious accommodation. The protocols he promulgated do not include any provision authorizing him to refer a judge who refuses to be vaccinated because of a sincerely held religious belief to the Commission on Judicial Conduct. In making such a referral, Judge Marks did not act in his judicial capacity. Frank Mora never appeared before him in any proceeding and his actions were in apparent furtherance of his administrative role. No cited case provides him with absolute immunity for such an act.

## Point VI

### Qualified immunity does not support dismissal.

If Appellees trammeled Mora's constitutional rights by failing to grant him a religious exemption and intruding upon his free exercise rights despite his clear articulation of his sincerely held religious belief and then retaliated against him for his assertion of those rights, they violated long established principles which govern religious liberty.

The SAC provides sufficient factual basis to conclude that this is precisely what happened here, and long before December 2021, the right to free exercise and the application of objective standards in assessing any claim for exemption from facially neutral laws were clearly established and those who implemented a different regime were responsible for knowing that it could not pass strict scrutiny and was

thus unconstitutional. *Kane*, *supra* at 169 (citing *Church of the Lukimi Babalu Ave., Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993)).

Of critical importance here is that this Court issued Kane on November 21, 2021, before Judge Mora was subject to the mistreatment outlined in his Complaint. Those responsible for that mistreatment totally ignored this court's guidance, engaged in particularized and baseless second-guessing of sincerely held religious beliefs, eschewed alternatives which were narrowly tailored and could have satisfactorily addressed health and safety concerns, and, instead, barred Mora from his workspace, relegated him to second class status, deprived him of the authority to preside over many of his cases, and stigmatized him.

Qualified immunity fails here because, according to the SAC, these state actors viewed themselves as above the law.

Likewise, the right to be free from retaliation for the exercise of religious beliefs was equally well established as the cases cited herein establish and the SAC plausibly shows how Appellee Marks engaged in such retaliation.

Accordingly, qualified immunity cannot now be granted to those who the SAC identifies as violating appellant's clearly established rights.

## Point VII

**Mora's request for an injunction is not moot.**

The district court held that one form of relief Mora sought – a permanent injunction enjoining Appellees from barring him from the courthouse based upon the conclusion that he did not qualify for religious accommodation – has been mooted because OCA surrendered, and, on the eve of the return date of Mora's motion for a preliminary injunction, vacated the challenged order.

However, this holding misstates the injunctive relief Mora sought: an order which "preliminarily and permanently enjoin[s] appellees from continuing to deprive him of his right to free exercise of his religion, order and direct appellees to recognize appellants sincerely held religious beliefs and provide him an exemption from any and all vaccination mandates . . . ." (JA-31-32 [Prayer for Relief]).

Unlike the overwhelming majority of the cases Appellees cited, here, Mora sought money damages from Appellees for their violation of his religious rights under Title VII and the First Amendment, as we well as an order reversing Appellees' denial of his application for a religious exemption. None of his causes of action have been rendered moot by the UCS' change of policy. Nor has the balance of his prayer for permanent injunctive relief, since the challenged denial of his religious accommodation still stands and will predictably be held against appellant should this issue again be made relevant by other Vaccine Mandates. Appellees

denied Mora a religious accommodation, concluding that he lacks a sincerely held religious belief. This finding will continue to haunt Mora in any like situation and its reversal is a critical component of the relief he continues to seek. Appellees did revoke this mandate, but, in light of the vicissitudes of this pandemic, that does not moot the issue.

*Am. Freedom Def. Initiative v. MTA*, 109 F.Supp.3d 626, 630 (S.D.N.Y. 2015) is instructive. There, plaintiffs obtained a preliminary injunction against an MTA advertisement policy. The MTA then radically altered its policy and sought relief from the injunction. Judge Koeltl noted that "defendants bear a 'heavy burden' in showing that the appellant claims for injunctive relief have become moot. *Friends of the Earth v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189. 'The voluntary cessation of allegedly illegal conduct will render a case moot if the appellees can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.' *Granite State Outdoor Adver., Inc. v. Town of Orange, Conn.*, 303 F. 3d 450, 451 (2d Cir. 2002) (*per curium*)." *Id.* at 630

Unlike this precedent, here, there is every reason to believe that in a similar "public health emergency," Appellee UCS will refer, as it did when Judge Mora sought a religious exemption for a second time in 2022, to its prior 2021 denial as dispositive and refuse to revisit the bases for his accommodation request;

37

accordingly, Appellees' forced decision to allow appellant access to his job cannot moot his entitlement to review of that decision and the related request for injunctive relief. Moreover, the interim event, that is, appellee UCS's general abandonment of its mandate, does not speak to the specific issue – whether Mora is entitled to a religious accommodation. That issue has not been resolved and is not moot.

## CONCLUSION

The SAC sets out viable claims against all the Appellees and the Judgment dismissing it should be vacated and the matter remanded.

Dated:      Goshen, New York
              November 20, 2023         Respectfully submitted,

                              SUSSMAN & GOLDMAN
                              *Attorneys for Plaintiff-Appellant*

                        By: _____
                              Michael H. Sussman, Esq.
                              1 Railroad Avenue, Ste. 3
                              P.O. Box 1005
                              Goshen, New York 10924
                              (845) 294-3991 [Tel.]
                              (845) 294-1623 [Fax]
                              sussman1@sussman.law

## CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 8,751 words, excluding those parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in Time New Roman 14-point type for text and footnotes.