To be argued by:     Robyn L. Rothman

# 23-7231

## United States Court of Appeals
## For the Second Circuit

FRANK MORA,

*Appellant,*

-vs-

NEW YORK STATE UNIFIED COURT SYSTEM, OFFICE OF COURT ADMINISTRATION, ANNE MINIHAN, LAWRENCE MARKS, JUSTIN BARRY, ROSEMARY MARTINEZ-BURGES, JENNIFER DILALLO, SHAWN KERBY, KEITH MILLER, LINDA DUNLAP-MILLER, SCOTT MURPHY, MICHELLE SMITH, JOHN SULLIVAN, DAN WEITZ, NANCY BARRY, TAMIKO AMAKER

*Appellees*

## BRIEF FOR APPELLEES OCA AND UCS

DAVID NOCENTI,
Counsel

Office of Court Administration
New York State Unified Court System
25 Beaver Street, 10th Floor
New York, New York 10004
(212) 428-2150

Attorney for Appellees
New York State Unified Court System
Office of Court Administration

# TABLE OF CONTENTS

Page

Table of Authorities......................................................................i

PRELIMINARY STATEMENT.................................................1

STATEMENT OF THE ISSUES..............................................2

I. Plaintiff-Appellant's Section 1983 Claims Against the OCA Defendants are Barred..........................................................12

II. Plaintiff-Appellant's Claims Against UCS and OCA Fail to State A Claim Upon Which Relief May Be Granted Under Title VII. ................15

    a. Plaintiff-Appellant is Not an Employee of the OCA Defendants Under Title VII ................................................................16

    b. Plaintiff-Appellant's Complaint Failed to Allege a Failure to Accommodate Claim Under Title VII.................................24

III. Plaintiff-Appellant Was Not Entitled to Injunctive Relief. ..............31

CONCLUSION ......................................................................32

# <u>Table of Authorities</u>

## Cases

*Anderson v. State of New York*, 614 F. Supp. 2d 404, 426 (S.D.N.Y. 2009) ................................................................................... 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................... 15

*Baker v. The Home Depot*, 445 F.3d 541 (2d Cir. 2006).......................... 24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................... 15

*Butler v. New York State Dep't of Law,* 211 F.3d 739 (2d Cir. 2000) ..... 18

*Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440 (2003) ............................................................................................. 20, 21

*Cosme v. Henderson*, 287 F.3d 152 (2d Cir. 2002) ............................ 25, 26

*Dellmuth* v. *Muth*, 491 U.S. 223, 7 (1989) ............................................... 17

*Dube v. State Univ. of New York*, 900 F.2d 587 (2d Cir. 1990) ........ 13, 32

*EEOC v. Port Auth. of N.Y. & N.J.,* 768 F.3d 247 (2d Cir 2014) ........... 15

*Elmanayer v. ABF Freight Sys.*, 2001 WL 1152815, (E.D.N.Y. Sept. 20, 2001), *aff'd sub nom. Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130 (2d Cir. 2003) ............................................................................ 25

*Felder v. United Tennis Association,* 27 F.4th 834 (2d Cir 2022) 16, 19, 20

*Ferrelli v. State of New York Unified Court System*, 2022 WL 673863 (N.D.N.Y. March 7, 2022) ................................................................. 29

*Gregory v. Ashcroft*, 501 U.S. 452 (1991) ............................... 17, 18, 19, 20

i

*Gulino v. N.Y.S. Educ. Dep't,* 460 F.3d 361, (2d Cir. 2006)....................16

*Gollump v. Spitzer*, 568 F.3d 355 (2d Cir. 2009) ....................................13

*Harris v. New York State Dep't of Health*, 202 F. Supp. 2d 143 (S.D.N.Y. 2002)...........................................................................................26, 32

*Kane v. DiBlasio* ......................................................................................14

*Kimel v. Florida Bd. of Regents*, 528 U.S. 62 (2000) .............................19

*Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706 (2d Cir. 2001) ...........................................................................................30

*Mandala v. NTT Data, Inc.,* 975 F.3d 202 (2d Cir. 2020) ......................15

*Ricci v. DeStefano*, 557 US 557 (2009).....................................................30

*Savarese v. Crosson*, 150 Misc.2d 180 (Sup. Ct. Queens Co.) ...............18

*Spencer v. Doe*, 139 F.3d 107 (2d Cir. 1998) ..........................................14

*Thomas v. Nat'l Assoc. of Letter Carriers*, 225 F.3d 1149 (10th Cir. 2000) ............................................................................................................25

*Thompson v. City of New York*, 2002 WL 31760219 (S.D.N.Y. Dec. 9, 2002)...........................................................................................................28

*Thompson v. New York*, 487 F. Supp. 212 (N.D.N.Y 1979) .............14, 15

*Trivedi v. N.Y.S. Unified Court System Office of Court Admin.*, 818 F.Supp.2d 712 (S.D.N.Y. 2011). ........................................................12

*Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989) ...................14

**Federal Constitutional Provisions**

U.S. Const. Amend. 11 ........................................................ 12, 13, 14, 15

**State Constitutional Provisions**

N.Y.S. Const., Art. VI, § 17. ....................................................... 21

N.Y.S. Const., Art. VI, § 22. ....................................................... 21

**Statutes**

29 U.S.C 630(f). ............................................................. 17, 18, 19

42 U.S.C. 1983 ................................................................ passim

42 U.S.C. 2000e-2 ............................................................. passim

N.Y. Uniform City Ct. Act § 2104(e)(iii). .................................. 22

N.Y. Exec. Law Art. 15 . ...................................................... 15

# PRELIMINARY STATEMENT

Plaintiff Frank Mora, a Poughkeepsie City Court judge appointed by the Mayor of the City of Poughkeepsie, alleges that the New York State Unified Court System and Office of Court Administration (hereinafter   referred collectively as "OCA")[1] and Anne Minihan, Lawrence Marks, Justin Barry, Rosemary Martinez-Burges, Jennifer DiLallo, Shawn Kerby, Keith Miller, Linda Dunlap-Miller, Scott Murphy, Michelle Smith, John Sullivan, Dan Weitz, Nancy Barry, Tamiko Amaker (hereinafter "Individual Defendants") violated his right to Free Exercise under the First Amendment as enforced by Section 1983 and that they discriminated against him for his religious beliefs by denying his request for exemption to UCS' COVID-19 vaccination policy. This appeal arises out of the district court's dismissal of all claims against all of the defendants including the OCA defendants. The order dismissing the complaint was entered on September 19, 2023, by the United States District Court for the Southern District of New York (Bricetti, J).

---

[1] The District Court order also refers to the Unified Court System and Office of Court Administration collectively as "OCA." (JA 127).

1

## STATEMENT OF THE ISSUES

1. Did the District Court err in determining that the OCA defendants were immune from suit under the Eleventh Amendment for Plaintiff's 42 U.S.C. § 1983 claims?

2. Did the District Court err in determining that an employer-employee relationship between Plaintiff and the OCA defendants did not exist in order to sustain a plausible claim for religious discrimination under Title VII?

## STATEMENT OF FACTS

For purposes of this brief, only materials contained within the Joint Appendix may be considered. The relevant and non-conclusory factual allegations and procedural history are repeated and summarized below.

### A. Plaintiff's Judgeship History

By letter, dated November 23, 2010, the former Poughkeepsie, New York, Mayor John C. Tkazyik appointed Plaintiff to a ten-year term as a City Court Judge for the Poughkeepsie City Court, part of UCS, to expire on December 31, 2020. JA-15, 56-57 [2] By letter, dated August 17, 2020, former Poughkeepsie Mayor Robert G. Rolison re-appointed Plaintiff to a second ten-year term as a City Court Judge for Poughkeepsie. JA-99 Plaintiff's current term is set to expire on December 31, 2030. JA-100.

### B. Plaintiff's Request for a Religious Vaccine Exemption

On September 10, 2021, UCS notified its Judges, Justices, and non-judicial employees by two official memoranda that UCS would require all judges and non-judicial personnel to be vaccinated by

---

[2] All further citations to the Joint Appendix are abbreviated to "JA-"

3

September 27, 2021, unless otherwise approved for an exemption due to medical reasons or sincerely held religious beliefs. JA-.101-130  Both memoranda stated that exemptions to the mandatory vaccination requirement will be considered for judges (and non-judicial employees) with sincerely held religious beliefs and practices that prohibit them from receiving a Covid-19 vaccine.  JA-102, 105-106.  The memoranda further stated that applications for religious exemption must contain the judge or the employee's written, signed, and notarized statement detailing the religious basis for his/her objection to Covid-19 vaccination and the religious principles that guide the objections to Covid-19 vaccination.  JA-102.  The deadline for all judge and non-judicial employees to apply for the religious or medical vaccine exemption was set for September 27, 2021. JA-102.  Judges and employees were directed to upload their exemption requests on or before September 27, 2021, through the online employee portal.  JA-102.

The memorandum also stated that judges and employees who timely file a request for exemption will be subject to the Mandatory Testing Program while their request is being reviewed.  JA-102-103. Judges and employees who are granted a medical or religious exemption

to vaccination will be subject to the Mandatory Testing Program during the specified exemption period. JA-102-103. UCS advised that individuals that failed to comply with the policy would be prohibited from entering UCS facilities. JA-106, 110, 117. UCS' Mandatory Testing Program was implemented on September 27, 2021, and applied only to non-vaccinated personnel. JA-102-103.

On September 21, 2021, Plaintiff submitted a request for a religious exemption to the UCS Covid-19 vaccination policy using the forms annexed to the September 10, 2021, UCS Vaccination Policy Memorandum. JA-131-137. Plaintiff stated therein, in relevant part:

> I claim exemption from immunizations/vaccinations based on my sincere and genuine convictions and beliefs. I was baptized a Roman Catholic . . . on December 29, 1970.
> . . .
> The Catechism of the Catholic Church defers to moral conscience as the guideline that states, 'In all he says and does, many is obliged to follow faithfully what he knows to be just and right.' "

JA-134.

On November 4, 2021, the UCS Vaccination Exemption Committee sent Plaintiff a letter and a Religious Exemption From COVID-19 Vaccination Supplemental Form requesting "more information before it

5

can make a final determination." JA-138. UCS requested further information from Plaintiff regarding his history of taking or abstaining from medications, vaccines, medical treatments and procedures, or any foods as it relates to his alleged religious beliefs, and specifically requested that Plaintiff complete only Section B of the supplemental form. JA-138-145.

On November 12, 2021, Plaintiff submitted his response to UCS' request for more information. JA-146-149. Complainant, in answering question 1 ("Please list all the medicines, medical treatments and procedures, vaccines, and/or foods that you abstain from due to your religious beliefs:"), stated:

> I fully stated my personal deeply held and sincere religious beliefs regarding vaccines in my [September 21, 2021 request]. Regarding medicines, medical treatments and procedures, I do not speculate as to what will happen in the future. My family currently does not take any medicines. Again, I will not speculate as to the future, as it is impossible to comment on something of which I have no knowledge. In addition, there is no comparison to taking vaccine to possibly prevent a future disease . . . and taking a medicine or having a medical treatment or procedure to help a body suffering from a crisis. If my body was in crisis, I would consider all of the options available to me, and discuss what to do with my doctor. JA-149

6

In response to question 3 ("Please provide a detailed explanation as to why your religious faith requires you to abstain from the listed substances in question 1."), Plaintiff referred to his statements in his September 21, 2021 request. JA-148 Plaintiff made no further submissions and did not provide any other documents articulating his alleged religious beliefs that prevented him from being vaccinated.

On December 23, 2021, UCS informed Plaintiff by letter that his religious vaccination exemption request was denied. JA-150. As a result, Plaintiff was required to submit proof of taking his first dose of a COVID-19 vaccination on or before January 3, 2022. JA-150.[3]

### C. Plaintiff's Prohibition from Entering UCS Facilities

On or about January 3, 2022, Plaintiff was prohibited from entering any UCS facilities (courthouses and offices) on the basis that he was not vaccinated against Covid-19 pursuant to UCS policy. JA-22; 62 On February 15, 2023, UCS fully rescinded its policy requiring all judges and employees to be vaccinated against Covid-19, thereby allowing non-

---

[3] On September 21, 2022, Plaintiff submitted a second unsolicited request to UCS for exemption from its vaccination policy. No action was taken on Plaintiff's second request. JA-27-28, 66.

7

vaccinated judges and employees with granted exemptions to return to work in-person in UCS facilities.  JA-151-152. Plaintiff, and others, are now no longer prohibited from entering UCS facilities.

**D.  Plaintiff's New York State Division of Human Rights Complaint**

On December 28, 2021, Plaintiff filed a complaint with the New York State Division of Human Rights ("SDHR"), alleging that UCS and OCA had discriminated against him in violation of his rights under Title VII and the New York State Human Rights Law (NY Exec. Law, art. 15) by denying his request to be exempt from UCS' Covid-19 vaccination policy.  JA-62, 153-159.  Pursuant to normal procedures, the SDHR sent Plaintiff's complaint to the Equal Employment Opportunity Commission ("EEOC") in New York JA-159.

By Determination and Order after Investigation, dated July 6, 2022, the SDHR determined that "no probable cause" exists to believe that UCS had engaged in discrimination by denying his request for an accommodation, finding that Plaintiff had failed to articulate a religious belief or tenet that conflicted with UCS' vaccination policy.  JA-160-161. On November 4, 2022, the EEOC adopted the SDHR's findings, and issued its Determination and Notice of Rights.  JA-79-80.

8

###### E. Plaintiff's Commencement of the Action and OCA's Motion to Dismiss

On December 6, 2022, Plaintiff commenced this action against the New York State Unified Court System, Office of Court Administration ("OCA" or "OCA Defendants") and Anne Minihan, Lawrence K. Marks, Justin Barry, Nancy Barry, Rosemary Martinez-Burges, Jennifer DiLallo, Shawn Kerby, Keith Miller, Linda Dunlap-Miller, Scott Murphy, Michelle Smith, John Sullivan, and Dan Weitz (the "Individual Defendants"). JA-3; 56-68. On January 19, 2023, Plaintiff filed a motion for a preliminary injunction. JA-7. On February 16, 2023, Plaintiff withdrew his preliminary injunction motion as moot upon recission of OCA's Vaccination Policy. JA-9. Thereafter, on February 28, 2023, the New York State Office of the Attorney General appearing, on behalf of the Individual Defendants, moved to dismiss Plaintiff's claims. JA-9. On that same date the New York State Office of Court Administration, Counsel's Office on behalf of the OCA Defendants moved to dismiss Plaintiff's claims. JA-9; 94-160. On March 15, 2023, Plaintiff filed his First Amended Complaint. JA-10. On April 5, 2023, the Individual Defendants filed a motion to dismiss the First Amended Complaint and the OCA Defendants chose to rely upon its initial motion. JA-10-11; 162-

184. On May 3, 2023, Plaintiff filed a joint opposition to the OCA and Individual Defendants respective motions to dismiss. JA-185-247 On May 15, 2023, Plaintiff filed a Second Amended Complaint. JA-12; 15-32. On May 23, 2023, the OCA defendants filed its Reply Brief and the Individual Defendants filed their Reply Brief one day later. JA-12; 248-258.[4] By Order dated September 19, 2023, the District Court granted the OCA and Individual Defendants motions to dismiss and directed the Clerk to terminate the action. JA-13; 259-287.

## STANDARD OF REVIEW

The Court reviews a district court's grant of a motion to dismiss under Rule 12(b)(6) *de novo*. It accepts as true the factual allegations in the complaint and draws all inferences in the plaintiff's favor. A court may dismiss an action "only if it appears beyond that, the plaintiff can prove no set of facts in support of his claim which will entitle him to relief."

---

[4] Plaintiff failed to include OCA and UCS' Reply Brief to the Joint Appendix. It was previously filed under Docket Entry #95, dated May 23, 2023.

## SUMMARY OF ARGUMENT

The district court correctly dismissed Plaintiff's Section 1983 claim against OCA. Under the Eleventh Amendment, a claim cannot be maintained against a state or state entity that has not consented to suit in federal court. Here, the Unified Court System is the judicial branch of the New York State government and considered an "entity" of New York State. The Office of Court Administration is the administrative arm of the Unified Court System and does not exist separately from it. Because New York State, its branches of government, and its agencies have not consented to suit under the Eleventh Amendment, it was proper for the district court to dismiss Plaintiff's claims pursuant to 42 U.S.C. §1983 ("Section 1983"). Equally, the district court properly dismissed Plaintiff's Section 1983 claims against OCA because OCA is not considered a "person" within the meaning of the statute.

More so, Plaintiff's Title VII claims against OCA were properly dismissed because the district court correctly determined that Plaintiff is not an "employee" under the statute. Plaintiff's complaint failed to state any facts sufficient to show that Plaintiff—a city court judge appointed by an elected official—was an employee of the OCA defendants.

11

Finally, the district court also properly dismissed Plaintiff's Title VII claims against OCA because he failed to state a claim for religious discrimination through a failure to accommodate. Plaintiff's complaint failed to plausibly allege a religious discrimination claim because the facts as alleged show that Plaintiff failed to inform OCA of his religious beliefs.

## ARGUMENT

### I. Plaintiff-Appellant's Section 1983 Claims Against the OCA Defendants are Barred.

The Order of the District Court should be affirmed because OCA properly established that it is immune from suit under Section 1983 pursuant to the Eleventh Amendment. The State of New York has not consented to suit in federal court for Section 1983 claims of the type alleged and it is well-settled that New York State and its agencies and officers are protected from such suits by immunity under the Eleventh Amendment, regardless of whether the relief sought from them is legal or equitable in nature. *See Dube v. State Univ. of New York*, 900 F.2d 587, 594-95 (2d Cir. 1990); *Trivedi v. N.Y.S. Unified Court System Office of Court Admin.*, 818 F.Supp.2d 712, 721-22 (S.D.N.Y. 2011). Here,

12

Plaintiff alleged a claim against OCA pursuant to Section 1983 for a violation of his First Amendment rights which is barred by the Eleventh Amendment because "[t]he New York State Unified Court System is an arm of the State…and therefore protected by Eleventh Amendment sovereign immunity." *Gollump v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). Absent any power by Congress to override Eleventh Amendment immunity to enforce "the substantive provisions of the Fourteenth Amendment" a Section 1983 claim cannot be maintained against the State or its agents without consent. *See Dube v. State Univ. of New York*, 900 F.2d at 594.

To the extent that Plaintiff argues that the district court erred in finding that sovereign immunity applied to OCA in dismissing his Section 1983 claim, this allegation is misplaced.[5] Plaintiff offers no

---

[5] It is unclear from Point VI of Plaintiff's brief which of the appellees these arguments apply to. Both the OCA defendants and the Individual Defendants separately argued that Eleventh Amendment sovereign immunity bars Plaintiff's Section 1983 claims, a point in which the District Court agreed but only as to the OCA defendants (JA-127). However, Plaintiff refers to the immunity arguments raised as "qualified immunity" and implicates the actions of the Individual Defendants. Although the Individual Defendants did argue that they were entitled to "qualified immunity" it does not appear that the District Court endorsed those arguments or dismissed the claims against the Individual Defendants on that basis. The only immunity

substantive arguments to this Court as to why or how his Section 1983 claim against OCA escapes sovereign immunity under the Eleventh Amendment other than his flawed reliance on *Kane v. DiBlasio* and the conclusion that the appellees "viewed themselves above the law" in enacting and implementing the Vaccination Policy. (Mora Brief at 35). This is not a proper analysis under the Eleventh Amendment—indeed Plaintiff does not even appear to address the issue of sovereign immunity—and this Court should disregard it. Plaintiff fails to show how the Eleventh Amendment does not bar his Section 1983 claims in either his opposition or the Complaint.

Even if this Court were to find that the Eleventh Amendment does not bar Plaintiff's suit, his Section 1983 claims are equally inapplicable to the OCA defendants. Section 1983 claims are not applicable to the OCA defendants because they are not "persons" within the meaning of the statute. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under 1983"); *Anderson v. State of New York*, 614 F. Supp. 2d

---

arguments that the District Court relied upon in its ruling were the sovereign immunity arguments raised by the OCA defendants.

404, 426 (S.D.N.Y. 2009) (dismissing claims brought pursuant to Section 1983 against the State of New York and OCA); *see also*, *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998); *Harris v. New York State Dep't of Health*, 202 F. Supp. 2d 143, 178 (S.D.N.Y. 2002); *Thompson v. New York*, 487 F. Supp. 212, 228 (N.D.N.Y 1979).    Accordingly, this court should not disturb the decision of district court in its finding that Plaintiff's Section 1983 claims are barred by the Eleventh Amendment and Section 1983's inapplicability to OCA.

## II.    Plaintiff-Appellant's Claims Against UCS and OCA Fail to State A Claim Upon Which Relief May Be Granted Under Title VII.

Plaintiff's complaint has failed to state a claim upon which relief may be granted as against the OCA Defendants. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Plaintiff failed to allege any factual allegations that he sufficiently informed the OCA defendants of his religious beliefs that would "nudge [his] claims 'across the line from conceivable to plausible." *Mandala v. NTT Data, Inc.,* 975 F.3d 202, 208 (2d Cir. 2020)(*quoting*

15

*EEOC v. Port Auth. of N.Y. & N.J.,* 768 F.3d 247, 254 (2d Cir 2014). Plaintiff's initial Complaint, FAC, and SAC also fail to provide any factual support that the normal indicia of an employer-employee relationship exist between himself and the OCA defendants. Instead, Plaintiff waited until his opposition to OCA's motion to dismiss to make any allegations to support his position that he is an employee of the OCA defendants, but each of his allegations—as reiterated in his brief—are without merit. (See Mora Brief at 19-20). For the below reasons, the District Court properly dismissed the Complaint, and this Court should affirm.

### a.  Plaintiff-Appellant is Not an Employee of the OCA Defendants Under Title VII

The district court correctly dismissed Plaintiff's Title VII claims against OCA, finding that Plaintiff failed to allege any facts sufficient to establish that he is an "employee" for the purposes of protection from discrimination under Title VII. "The existence of an employer-employee relationship is a primary element of Title VII claims." *Felder v. United Tennis Association,* 27 F.4th 834, 838 (2d Cir 2022) (*citing Gulino v. N.Y.S. Educ. Dep't,* 460 F.3d 361, 370 (2d Cir. 2006)). An employee as defined by

16

Title VII is one that is "employed by an employer." 42 U.S.C. 2000e-2(a).

Title VII specifically states, in relevant part,

> "The term "employee means an individual employed by any employer except that the term "employee shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policymaking level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office…"

*Id*. Congress used identical language to define "employee" in the

Age Discrimination in Employment Act of 1967 ("ADEA"), enacted just

three years after Title VII (part of the Civil Rights Act of 1964). *See* 29

U.S.C 630(f). The Supreme Court, in evaluating the virtually identical

definition of employee under the ADEA, found that state judges are not

"employees" under the ADEA, regardless of whether a particular judge

engages in policymaking. *See Gregory v. Ashcroft*, 501 U.S. 452, 467

(1991). The Supreme Court found, in pertinent part:

> Nonetheless, "appointee at the policymaking level," particularly in the context of the other exceptions that surround it, is an odd way for Congress to exclude judges; a plain statement that judges are not "employees" would seem the most efficient phrasing. But in this case we are not looking for a plain statement that judges are excluded. We will not read the ADEA to cover state judges unless Congress has made it clear that judges are *included*. This does not mean that the Act must mention judges explicitly, though it does

17

not. Cf. *Dellmuth* v. *Muth*, 491 U.S. 223, 233, 105 L. Ed. 2d 181, 109 S. Ct. 2397 (1989) (SCALIA, J., concurring). *Rather, it must be plain to anyone reading the Act that it covers judges. In the context of a statute that plainly excludes most important state public officials, "appointee on the policymaking level" is sufficiently broad that we cannot conclude that the statute plainly covers appointed state judges. Therefore, it does not.*

*Id.* (emphasis in the original and added). *See also Savarese v. Crosson*, 150 Misc.2d 180, 181-82 (Sup. Ct. Queens Co.) (applying *Gregory* to find that New York City criminal court judges, appointed by the Mayor of New York City and part of the state court system, are not employees under the ADEA). The Supreme Court's analysis is applicable here, particularly since Congress used identical language to define an "employee" under both statutes.

Plaintiff is incorrect in asserting that the analysis under *Gregory* is inapplicable. Even if—as Plaintiff claims—the purposes by which Title VII and the ADEA were enacted differ, the inquiry under both statutes as to whether a plaintiff asserting a claim of employment discrimination is considered an "employee" are identical because the definition of employee under the ADEA was modelled after Title VII. "In 1974 Congress amended the ADEA, adopting verbatim the definition of

18

employee found in Title VII." *Butler v. New York State Dep't of Law,* 211 F.3d 739, 747 (2d Cir. 2000). Indeed, it appears that Plaintiff confuses this issue of whether a person is an "employee" under the definition of both the ADEA and Title VII with that of whether an equal protection challenge to the ADEA and Title VII are subject to the same analysis. *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 84 (2000). In *Kimel,* the Supreme Court held that discrimination based on age does not offend the Fourteenth Amendment—unlike discrimination based on religion—"if the age classification in question is rationally related to a legitimate state interest" *Id*. Yet, this is not relevant to the question of whether the definition of "employee" under ADEA—which is identical to that under Title VII—applies to a person asserting such a claim in the first instance. In assessing that inquiry, the Court in *Gregory* applied the plain statement rule to determine that judges fall under the policymaker exemption to the ADEA. *See Gregory v. Ashcroft*, 501 U.S. at 467. Thus, the Court need not get to the issue of a constitutional violation under either the ADEA or Title VII if the plaintiff is not an "employee" as defined by those statutes which would require a separate analysis as suggested by Plaintiff.

In assessing whether Plaintiff is considered an "employee" of OCA, due consideration must be given to the allegations within the Complaint. "The plausible existence of a requisite employer-employee relationship is thus a cornerstone of an adequately pled Title VII complaint." *Felder v. United States Tennis Association,* 27 F.4th at 838. Here, Plaintiff admits that he is a "duly appointed and sworn City Court Judge." JA-15-16; 56-57. and that the "Mayor of the City of Poughkeepsie appointed him…". (JA 28, ¶84). Although the District Court did not rely upon the letters of appointment submitted with OCA's motion to dismiss, Plaintiff nevertheless did not dispute that he was appointed by an elected official. (JA-127, P. 15 fn.8).[6] Plaintiff offered no other factual allegations in the initial Complaint, FAC, or SAC, to support an inference that an employer-employee relationship existed as between himself and the OCA defendants. Rather, he offered several assertions— for the first time

---

[6] Certainly, because Plaintiff admits in his Complaint that he was appointed by the Mayor of the City of Poughkeepsie, his letters of appointment should be considered by this Court. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal citations and quotation marks omitted).

through his attorney's affidavit in opposition to the motion to dismiss—
that attempt to manufacture an issue of fact as to the employment
relationship.

Despite Plaintiff's conclusory allegations contained only within his
brief, the normal indicia of an employer-employee relationship are not
present here. *See Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538
U.S. 440, 449-50 (2003) (discussing the six factors used in determining
whether an entity exerts "control" over an individual's terms of
employment sufficient to find an employer-employee relationship).
Specifically:

> Whether the organization can hire or fire the individual or set
> the rules and regulations of the individual's work;
> Whether and, if so, to what extent the organization supervises
> the individual's work;
> Whether the individual reports to someone higher in the
> organization;
> Whether and, if so, to what extent the individual is able to
> influence the organization;
> Whether the parties intended that the individual be an
> employee, as expressed in written agreements or contracts;
> Whether the individual shares in the profits, losses, and
> liabilities of the organization.

*See id.* First, Plaintiff, as a Judge appointed by the Poughkeepsie
mayor, was not hired by UCS or OCA, nor can UCS or OCA end his term

21

as a Judge, a point Plaintiff does not dispute. *See* N.Y.S. Const., Art. VI, § 22. Second, neither UCS nor OCA control or otherwise "set the rules and regulations" of Plaintiff's work as a Judge. Plaintiff's authority, responsibilities, and term are set by the New York Constitution. *See id.*, at § 17. Plaintiff provides no factual support for his assertion that Judge Anne Minihan supervises his work or dictates how he exercises his authority as a city court judge. Plaintiff's decision-making ability as a Judge is limited only by his jurisdiction and the rulings of higher appellate courts. Accordingly, the OCA defendants do not supervise Plaintiff's work. Despite his assertion to the contrary, it is not "obvious" that Plaintiff reports to "someone higher." Plaintiff's allegation in his brief that by being provided with a workstation, supplies, and court assignments without further explanation does not support any inference that there is anyone within UCS or OCA—higher than Plaintiff—that he "reports" to.[7] Third, Plaintiff has no influence over UCS or OCA operations and there is no agreement or written contract between Plaintiff and UCS or OCA (or any other defendant herein). The last

---

[7] Certainly, to the extent that Plaintiff "reports" to, it would be the individual that appointed him, the Poughkeepsie Mayor. See Uniform City Ct. Act § 2104(e)(iii).

factor—whether the individual shares in profits, losses, and liabilities—is not applicable here because UCS and OCA are government entities, a point Plaintiff does not dispute (Mora Brief at 20).

In addition, his only other dispute here is whether a judge has the capacity to enact policy similar to that of the appointing elected official. as to be considered a "policymaker" and uses this Court's holding in *Butler v. New York State Dept of Law*, 211 F.3d 739 (2d Cir 2000) as support. (Mora Brief at 21). However, this Court in *Butler* explicitly stated, "[o]ur analysis of Butler's status as policy maker for First Amendment purposes does not control our Title VII inquiry." *Id.* at 746. Instead, this Court held that its "Title VII analysis…draws on the language of the statute and congressional intent." *Id.* Even if this Court had previously ruled that judges appointed by elected officials were covered employees under the ADEA, this court acknowledged that *Gregory v. Ashcroft* specifically overruled that holding as to appointed judges while still maintaining that its reasoning was still applicable to other appointments of elected officials. *Id* at 748; *see also Tranello v. Frey*, 962 F.2d 244, 249 (2d Cir. 1992). Plain and simple, because Plaintiff is a judge appointed by an elected official on a policy making level—a fact in

23

which Plaintiff does not dispute—the Supreme Court's holding in *Gregory v. Ashcroft* is controlling here. Accordingly, this District Court correctly determined that the Plaintiff is not an "employee" under Title VII and this Court should affirm.

### b. Plaintiff-Appellant's Complaint Failed to Allege a Failure to Accommodate Claim Under Title VII.

Plaintiff argues that the District Court erred in dismissing his Title VII claims against OCA because he plausibly alleged a violation of the statute. While the District Court did not reach the issue of whether Plaintiff plausibly alleged a violation of Title VII, OCA will nevertheless address these arguments.

OCA maintains that Plaintiff is not an employee as defined by Title VII. Yet, to the extent that Plaintiff is an "employee" under Title VII his claims still warrant dismissal for failure to state a claim because he fails to sufficiently plead facts supporting a cause of action against the OCA defendants resulting from the denial of his religious vaccine exemption request.

To establish a Title VII failure to accommodate claim, a plaintiff must demonstrate three elements: 1) he held a bona fide religious belief

conflicting with an employment requirement; 2) he informed his employers of this belief; and 3) he was disciplined for failure to comply with the conflicting employment requirement. *See Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006). Only if a *prima facie* case is established, then the employer must offer a reasonable accommodation unless doing so would cause an undue hardship. *Id.*, citing *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002).

Plaintiff has not and cannot establish a claim of Title VII religious discrimination for failure to accommodate because he failed to inform UCS of his religious beliefs through the interactive process. "The process of finding a reasonable accommodation is intended to be an interactive process in which both the employer and employee participate." *See Elmanayer v. ABF Freight Sys.*, 2001 WL 1152815, at *5 (E.D.N.Y. Sept. 20, 2001), *aff'd sub nom. Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130 (2d Cir. 2003) (*citing Thomas v. Nat'l Assoc. of Letter Carriers*, 225 F.3d 1149 (10th Cir. 2000) (discussing the interactive process in the context of an appeal on a motion to dismiss). UCS was unable—and not required—to provide Plaintiff a reasonable accommodation when he refused to provide the requested information. *See Elmenayer*, 2001 WL

25

1152815, at *5 ("Title VII requires an employer to accommodate, if possible without undue hardship, bona fide religious practices of which they are informed by their employees. *It does not entitle employees to escape discipline for violating workplace rules merely by stating, after the fact, that their religious practices led them to break the rules.*") (emphasis added); *Cosme v. Henderson*, 2000 WL 1682755, at *6 (S.D.N.Y. Nov. 9, 2000) ("[A] plaintiff bears the burden of demonstrating that [] he has a bona fide religious belief or practice that conflicts with an employment requirement [and] he informed the employer of this belief or practice[.]") (internal quotations marks omitted).

Plaintiff's own allegations demonstrate that he is responsible for the breakdown of the interactive process. Plaintiff acknowledges and concedes that UCS set up a policy and a process for employees to apply for an exemption. JA-18-19; 58-60. He concedes that this policy mandated an initial deadline of September 27, 2021. ¶ JA-18; 58. Plaintiff further concedes that he was asked to provide additional information in furtherance of his religious exemption through a supplemental form. JA-20; 61. Plaintiff's initial request did not describe *any* religious beliefs or tenets, apart from his "conscience," much less ones

26

that would prevent him from being vaccinated. JA-46-52 ("I do not wish to interfere with God's natural way. To inject foreign substances (immunizations) into our blood . . . is contrary to God's law and is against my conscience. To vaccinate would be an act of violence against my conscience, and thus, an evil.") JA-52

In response to Plaintiff's assertions that the Covid-19 vaccines would be a harmful intrusion on his body, UCS sought further information from him regarding his past use and/or abstention from using certain medications, vaccinations, medical treatments, and foods. JA-138. The supplemental form contained two sections; however, Plaintiff was asked to complete Section B only. JA-138.[8] Section B of the supplement form asked each individual a series of questions to assist UCS in further understanding their religious beliefs. JA-139-145. UCS included a firm deadline to submit the supplemental form, requiring

---

[8] Section A contained informational statements with respect to fetal cell lines in the development of Covid-19 vaccines and requests a signature from the employee affirming or swearing that taking the Covid-19 vaccine would violate their religious beliefs regardless of the informational statements. Section A also includes a chart with two groupings of pharmaceutical products that were tested on the HEK-293 Cell Line (*i.e.* fetal stem cells). There is nothing in Plaintiff's original request or his supplemental form to indicate that he was opposed to vaccination based on the use of fetal stem cells in their development.

27

Plaintiff to submit the documents by end of business on November 18, 2021.  JA-138.

Plaintiff submitted his supplemental form on November 12, 2021.  JA-62; 146-149.  He answered question 1, relying in part on his original request and stating:

> Regarding medicines, medical treatments and procedures, I do not speculate as to what will happen in the future.  My family currently does not take any medicines.  Again, I will not speculate as to the future, as it is impossible to comment on something of which I have no knowledge.  In addition, there is no comparison to taking vaccine to possibly prevent a future disease . . . and taking a medicine or having a medical treatment or procedure to help a body suffering from a crisis.  If my body was in crisis, I would consider all of the options available to me, and discuss what to do with my doctor.

JA-149.  Similarly, Plaintiff refused to answer question 3, instead relying on his statements in his original request, submitted on September 27.  JA-149. ("This is fully explained in my statement dated September 21, 2022).  Plaintiff's refusal to answer question 3 or to otherwise articulate any religious beliefs or tenets preventing his use of the Covid-19 vaccine was a breakdown in the interactive process, thereby preventing UCS, OCA, and their officials from considering his request for a religious accommodation on the merits.

28

In assessing the parties' engagement in an interactive process, "a court should look for signs of good faith or bad faith." *See Thompson v. City of New York*, 2002 WL 31760219 at *8 (S.D.N.Y. Dec. 9, 2002). "A party that fails to communicate or withholds important information solely within the knowledge of that party, can be found to have obstructed the process in bad faith." *Id.* In response thereto, Plaintiff failed to articulate the requested information in his submissions to UCS prior to both deadlines. UCS then denied Plaintiff's religious exemption request after reviewing his incomplete submissions. JA-62; 150.

Accordingly, Plaintiff has failed to state a claim for failure to accommodate, much less has he alleged that UCS, OCA, or any other defendant, engaged in discriminatory conduct. There is no basis to find that the OCA Defendants—or any defendant for that matter— specifically targeted him or held any discriminatory animus. Plaintiff seemingly acknowledges that UCS' process for reviewing and granting requests for accommodations from its vaccination policy was available to and applied equally to all judicial and non-judicial staff. JA-58-59. The questionnaire was used to assist UCS and the other defendants in understanding an applicant's objections to the vaccine and whether it

29

was a motivating factor in an applicant's request for exemption and was found by the District Court for the Northern District of New York to be entirely appropriate under the law. *See Ferrelli v. State of New York Unified Court System*, 2022 WL 673863, at \*8 (N.D.N.Y. March 7, 2022). Plaintiff concedes that UCS granted religious exemption requests of both judicial and non-judicial staff using the same forms, seeking the same information that was asked of Plaintiff. JA-61. Accordingly, Plaintiff cannot establish a claim of religious discrimination because he did not inform Defendants of his alleged religious beliefs in his original exemption request or in his supplemental form, instead relying on bald statements that he had sincerely-held beliefs against the Covid-19 vaccine.[9] Most importantly, Plaintiff alleges that at least two other judges with the same or similar beliefs were granted exemptions from the Vaccination Policy.

---

[9] Although the SDHR's determinations of "no probable cause" for Plaintiff's claims (JA-160-161) is not preclusive of the matter, the Supreme Court has found that the SDHR's determinations concerning Title VII claims should be given "substantial weight." *See Univ. of Tenn. v. Elliot*, 478 U.S. 788, 795-96 (1986). In contrast, however, the SDHR's Determination and Order may have preclusive effects on Plaintiff's claims brought pursuant to Section 1983. *See Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 728 (2d Cir. 2001).

Lastly, under Title VII, a plaintiff must show that a defendant's actions were motivated by a discriminatory intent. *See Ricci v. DeStefano*, 557 US 557, 577-78 (2009). There was no discriminatory intent on the part of UCS/OCA or its officials and no basis to believe such intent existed. In the absence of discrimination, it is not the province of courts or anti-discrimination agencies to sit as a "super personnel department to second-guess an employer's business judgment," even if it is poor or erroneous. *See Williams v. New York City Dept. of Sanitatio*n, 2001 WL 1154627, at *18 (S.D.N.Y Sept. 28, 2001) (collecting cases). Without question, UCS' process for reviewing vaccination exemption requests, including the use of the supplemental form, was facially neutral and narrowly tailored for purposes of determining applicant's sincerely-held religious beliefs. *Ferrelli*, 2022 WL 673863, at *3. Plaintiff does not have a legally actionable claim against OCA under Title VII because he did not inform OCA or the Individual defendants of what bona fide religious beliefs he has, if any, during the interactive process.

## III. Plaintiff-Appellant Was Not Entitled to Injunctive Relief.

In light of the recission of the vaccination policy during the pendency of the underlying litigation and because Plaintiff failed to state

31

a claim for which relief could be granted, the District Court properly determined that Plaintiff's claim for injunctive relief was moot, and dismissal was warranted.

Plaintiff fails to apprise this Court that he voluntarily withdrew his motion for a preliminary injunction upon being informed by OCA that the Vaccination Policy had been rescinded (JA 4, Docket Entry #68, dated 2/16/23). At the time of the District Court's decision, Plaintiff sought prospective relief pursuant to Section 1983 in the form of a permanent injunction whereby reversing the denial of his exemption request and granting him an exemption from any future vaccination mandates. However, because OCA is immune from Plaintiff's Section 1983 claims under the Eleventh Amendment, Plaintiff was not entitled to any relief against the OCA defendants under that statute. *See Dube v. State Univ. of New York*, 900 F.2d 587, 594-95 (2d Cir. 1990). Thus, the District Court correctly determined that Plaintiff's request for injunctive relief was moot and inapplicable as to OCA when it dismissed the Complaint.

## CONCLUSION

For the foregoing reasons, this Court should affirm the Order of the District Court granting OCA's Motion to Dismiss.

32

Dated:     January 19, 2024
           New York, New York

Respectfully Submitted,

DAVID NOCENTI
Attorney for Appellants

By:

Robyn L. Rothman, of counsel
Michael J. Siudzinski, of counsel

Office of Court Administration
25 Beaver Street, 10th Floor
New York, New York 10004
(212) 428-2150
RRothman@nycourts.gov
MSiudzin@nycourts.gov

33

CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE
REQUIREMENTS

I, Robyn L. Rothman, certify that:

1. This brief complies with the type-volume limitation of Fed. R. App.
P. 32(a)(7)(B) because, excluding the parts of the document
exempted by Fed. R. App. P. 32(f), it contains 6,986 words.

2. This brief complies with the typeface requirements of Fed. R. App.
P. 32(a)(5) and the type-style requirements of Fed. R. App. P.
32(a)(6) because it has been prepared in a proportionally spaced
typeface using Microsoft Word in Century Schoolbook 14-point for
text and footnotes.

Robyn L. Rothman, of counsel

34